| |
|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY |
| FORMAN HOLT ELIADES & RAVIN LLC<br>80 Route 4 East, Suite 290<br>Paramus, NJ 07652<br>(201) 845-1000<br>Special Counsel for Steven P. Kartzman,<br>Chapter 7 trustee<br>Michael E. Holt (MEH-8237) |

| | |
|---|---|
| In Re:<br><br>ARTS DES PROVINCES DE FRANCE, INC.,<br><br>         Debtor. | Chapter 7<br>Case No.  11-29111 (DHS)<br><br>Hearing Date:  August 8, 2011<br>         at 2:00 p.m. |

**APPLICATION FOR AN ORDER AUTHORIZING THE TRUSTEE (A) TO ENTER INTO AN AGENCY AGREEMENT WITH A JOINT VENTURE COMPRISED OF GREAT AMERICAN GROUP, LLC AND LIQUITEC INDUSTRIES, INC. TO CONDUCT GOING OUT OF BUSINESS SALES; (B) TO SELL THE DEBTOR'S ASSETS PURSUANT TO 11 U.S.C. §§ 363 AND 105; (C) TO MAINTAIN CERTAIN OF THE DEBTOR'S PRE-PETITION BANK ACCOUNTS; (D) TO PAY ALL COSTS ASSOCIATED WITH THE SALES; (E) TO RETAIN GREAT AMERICAN GROUP REAL ESTATE LLC d/b/a GA KEEN REALTY ADVISORS TO MARKET & <u>SELL LEASES; AND (F) GRANTING RELATED RELIEF</u>**

The application of Steven P. Kartzman, chapter 7 trustee (the "Trustee") for Arts des Provinces de France, Inc. (the "Debtor"), through his special counsel, Forman Holt Eliades & Ravin LLC, seeking entry of an order authorizing the Trustee (a) to enter into an agency agreement with a joint venture comprised of Great American Group, LLC and LiquiTec Industries, Inc. (collectively, the "Agent") to conduct going out of business sales; (b) to sell the Debtor's assets pursuant to 11 U.S.C. §§363 and 105; (c) to maintain certain of the Debtor's pre-petition bank accounts; (d) to pay all costs associated with the sales; (e) authorizing the retention

of Great American Group Real Estate LLC d/b/a GA Keen Realty Advisors to market and sell leases; and (f) granting related relief, respectfully represents the following:

## BACKGROUND

1.      On June 23, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").

2.      On June 24, 2011, the Office of the United States Trustee appointed the Trustee to serve as the chapter 7 Trustee for the Debtor's estate.

3.      The Debtor sold high end home furnishings, fabrics and related accessories under the trade name "Pierre Deux." It operated 23 retail stores and showrooms located in thirteen states. It also maintained an outlet store, warehouse and its corporate offices in Secaucus, New Jersey.

4.      The property of the Debtor's estate within the meaning of §541 of the Bankruptcy Code includes the Debtor's inventory, the non-residential real property leases (the "Leases") with the landlords (the "Landlords") for those locations, and the fixtures, furnishings, machinery, equipment, leasehold improvements, customer lists and domain name that the Debtor utilized in the operation of its business.

5.      As of the Petition Date, the book value of the Debtor's inventory was $7,940,088.11. The Debtor's schedules also reflect that its fixtures, furnishings, equipment, machinery and leasehold improvements had a total combined value of $2,595,188.24, although the actual value of those assets is unknown to the Trustee at this time. There are no known liens against any of the assets which are the property of the Debtor's estate.

6.      On July 15, 2011, the Trustee filed an application and related pleadings (the "Sale

Procedures Motion") (Docket No. 26) seeking the entry of an order approving certain bidding procedures in connection with a proposed sale of the Debtor's assets and granting certain related relief.

7. On July 20, 2011 at 10:00 a.m. the Bankruptcy Court conducted a hearing in connection with the Trustee's Sale Procedures Motion. At that time, the Court directed the Trustee to submit a revised form of order granting the relief sought in order to address objections that were filed by certain of the Landlords.

8. On July 22, 2011, the Court entered an order (1) authorizing the Trustee to sell the Debtor's assets free and clear of liens, claims, interests and encumbrances pursuant to 11 U.S.C. §363(b) and (f); (2) approving bidding procedures; (3) scheduling (a) bid deadline, (b) auction sale and (c) hearing approving sale; (4) approving sale process; and (5) granting related relief (the "Sale Procedures Order") (Docket No. 45).

9. Pursuant to the Sale Procedures Order, all Qualified Bidders[1] were to submit Qualified Bids to the Trustee on or before 9:00 p.m. (EDT) on July 26, 2011 (the "Bid Deadline") in connection with the proposed sale of the Debtor's assets. The Sale Procedures Order also provided that an auction sale would be conducted on July 28, 2011 if one or more Qualified Bids were received by the Trustee and that the court would conduct a hearing on August 8, 2011 at 2:00 p.m. to consider the Trustee's proposed sale of the Debtor's assets.

10. The Sale Procedures Motion contemplated a sale of the Debtor's assets in one or more of the following methods:

    (a) All of the Debtor's inventory, unexpired non-residential real

---

[1] Terms not otherwise defined herein shall have the same meaning as in the Sale Procedures Motion.

property leases, customer lists, fixtures, furnishings, machinery, equipment and good will as a going concern;

(b) All inventory, or

    (i) Inventory of some or all of the stores, or
    (ii) Inventory of one or both of the warehouses.

(c) All or some of the Debtor's leases, either alone or with inventory;

(d) The sale of the Debtor's customer lists alone or in conjunction with other assets; or

(e) A proposal to act as a liquidator of the Debtor's Assets, either:

    (i) With a guaranteed purchase price plus a formula for an upside payment, or
    (ii) On a cost to the estate basis.

11. The Trustee served notice of the Sale Procedures Motion and all related pleadings upon the Debtor's 20 largest unsecured creditors, all of the Debtor's landlords, all parties having filed notices of appearance in the Debtor's chapter 7 case and all parties having expressed an interest in acquiring some or all of the Debtor's assets. The Trustee also caused advertisements soliciting proposals to acquire the Debtor's assets to be published in the national edition of the Wall Street Journal (both print and on-line), the national edition of the New York Times (both print and on-line), the International Herald Tribune, and trade publications such as Furniture Today and Furniture World.

12. As of the Bid Deadline, the Trustee received no Qualified Bids for the bulk sale of the Debtor's assets or for the Debtor's non-residential and property leases. The only Qualified Bids received by the Trustee were from liquidators seeking to conduct "going out of business sales" on behalf of the Debtor's estate.

13. At the conclusion of the auction which was conducted on July 28 and July 29,

4

2011, the Trustee, in the exercise of his business judgment, determined that the proposal received from the Agent to conduct going out of business sales (the "GOB Sales") was the best offer received in connection with the proposed sale of the Debtor's assets. A copy of a proposed Agency Agreement (the "Agency Agreement") between the Trustee and Agent is attached hereto as Exhibit A.

14. The terms of the Agency Agreement between the Trustee and Agent are summarized as follows:

(a) Sale Term. The parties propose that the GOB sales shall commence on August 9, 2011 and shall continue until September 30, 2011, provided, however, that the sale term may be extended by mutual written agreement of Agent and the Trustee in the exercise of the Trustee's business judgment on terms substantially similar to those set forth in the Agency Agreement.

(b) Assets included. The Trustee proposes to offer for sale all of the Debtor's inventory, fixtures, furnishings and equipment located in the stores or at the Debtor's corporate offices and warehouse located in Secaucus, New Jersey.

(c) Agent's fees. The Agent will receive a base fee (the "Base Fee") as follows:

(i) Agent shall receive no fee from the sale of the Debtor's inventory until the net proceeds to the Trustee reach $3,900,000. After the net proceeds to the Trustee reach $3,900,000, Agent shall receive 4% of the gross proceeds (calculated from the first dollar) until the net proceeds to the Trustee reach $4,200,000. The Trustee and Agent shall equally share all net

5

        proceeds after the net proceeds to the Trustee exceed $4,200,000. Agent shall only receive payment of its fees to the extent that there are net proceeds available to pay them.

   (d) Expenses of sale. The Trustee shall be responsible for the payment of all Sale Expenses as defined in the Agreement and as set forth in the budget attached thereto. Agent has agreed to cap the sale expenses at an amount not to exceed 27.5 % of the gross proceeds.

15. Great American Group Real Estate LLC d/b/a GA Keen Realty Advisors ("GA Keen") also provided the Trustee with a proposal whereby it will attempt to market the Debtor's non-residential real property leases while the Agent is conducting the GOB Sales. A copy of the proposed retention agreement between GA Keen and the Trustee is attached as Exhibit B.

16. The proposal provided by GA Keen provides as follows:

   (a) GA Keen Realty shall be entitled to a commission of 5% of the gross proceeds to the estate of any Lease assigned to a third party, including any cure amounts paid by the assignee.

   (b) The Trustee shall reimburse GA Keen for its actual out of pocket expenses not to exceed $15,000 such as approved out of pocket marketing costs, travel, lodging and related expenses associated with marketing the Leases.

   (c) The parties propose that GA Keen shall market the Leases commencing immediately upon the entry of an order of the Bankruptcy Court authorizing its retention and continuing until the later of the time that the Leases are rejected or until September 30, 2011.

**RELIEF REQUESTED**

17. The Trustee in the exercise of his business judgment, believes that the GOB Sales will maximize the value of the Debtor's assets. In the event that the Trustee is not permitted to conduct such sales, he could be compelled either to (a) conduct a public auction of the Debtor's inventory, which most likely would result in the inventory being sold at distressed prices well below those contemplated pursuant to the Agency Agreement, or (b) immediately reject the Debtor's Leases and abandon the inventory at the stores, which would result in no benefit to the estate.

18. The various states in which the Debtor operated have or might have licensing and similar requirements with respect to the conduct of liquidation and store closing sales. In certain circumstances, however, these requirements do not apply where such sales are conducted pursuant to an Order of, and under the supervision of this Court.

19. Accordingly, the Trustee requests that this Court authorize the Trustee and Agent to conduct the GOB Sales without the necessity of, and the delay associated with, obtaining various state licenses or satisfying any additional requirements imposed.

20. As a general matter, under 28 U.S.C. § 959(b), bankruptcy trustees must "manage and operate the property ... according to the requirements of the valid laws of the state in which such property is situated...." Courts, however, have held that a debtor that is liquidating estate assets is not "managing and operating" under section 959(b). *See Alabama Surface Mining Comm'n v. N.P. Mining Co., Inc. (In re N.P. Mining Co., Inc.)*, 963 F.2d 1449, 1460-61 (11th Cir. 1992); *Missouri v. United States Bankruptcy Court*, 647 F.2d 768, 778 n. 18 (8th Cir. 1981), *cert. denied*, 454 U.S. 1162 (1982); *Missouri Dept. of Natural Res. v. Valley Steel Products Co., Inc. (In*

*re Valley Steel Products Co., Inc.)*, 157 B.R. 442, 447-48 (Bankr. E.D. Mo. 1993); *In re Scott Housing Sys. Inc.*, 99 B.R. 231, 235-36 (Bankr. D.N.J. 1989); *Cf. Matter of Bourne Chemical Co.*, 54 B.R. 126, 135 (Bankr. D.N.J. 1984) ("[s]ection 959(b) is applicable only where the property is being managed or operated for the purpose of continuing operations").

21.    Since the Trustee seeks to liquidate all of the Debtor's assets in the GOB Sales, section 959(b) does not require compliance with these state and local licensing procedures and other regulations.

22.    Moreover, federal bankruptcy law preempts state and local laws that conflict with the underlying policies of the Bankruptcy Code. *See Belculfine v. Aloe (In re Shenango Group, Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995), *aff'd*, 112 F.3d 633 (3d Cir. 1997) (since bankruptcy trustees and debtors-in-possession have unique fiduciary and legal obligations under the Bankruptcy Code, state statutes "cannot place burdens on them where the result would contradict the priorities established by the federal bankruptcy code").

23.    Preemption is appropriate where, as in this case, the applicable state laws involve economic regulation rather than the protection of public health and safety. *Id.* at 1353 (finding that "federal bankruptcy preemption is more likely ... where a state statute is concerned with <u>economic regulation</u> rather than with protecting the public health and safety"); *see also In re Scott Housing Sys. Inc.*, 91 B.R. at 196-97 (holding that automatic stay under section 362 is broad and preempts state law except for those laws designed to protect public health and safety).

24.    Here, state or local licensing requirements, time limits or bulk sale restrictions on liquidation sales would undermine the fundamental purpose of section 363(b) of the Bankruptcy Code by placing constraints on the Trustee's ability to marshal and maximize the value of assets for the benefit of the Debtor's estate and its creditors.

25. Bankruptcy Courts throughout the country have granted similar relief. *See In re The ½ Off Card Shops, Inc.*, (Bankr. E.D. Michigan, Southern Division, August, 1999)); *In re Ames Department Stores, Inc*, No. 01-42217 (Bankr. S.D.N.Y., August, 2001); *In re Bradlees Stores, Inc.*, No. 00-16033; *In re: Waccamaw's Homeplace*, No. 01-181 (Bankr. D. Del. January, 2001 and May, 2001); *In re Drug Emporium, Inc.*, No. 01-4066 (Bankr. N.D. Ohio, E. Div., March, 2001); *In re: Phar-Mor, Inc.*, No. 01-44007 (N.D. Ohio, E. Div., March, 2001); *WSR Corporation, et al.*, 98-1241(MFW) (Bankr. D. Del. October 28, 1998); *In re Montgomery Ward Holding Corp.*, No. 97-1409(PJW) (Bankr. D. Del. Nov. 7, 1997); *In re Edison Brothers Stores, Inc.*, No. 95-1354(PJW) (Bankr.D. Del. June 25, 1997); *In re County Seat Inc.*, No. 96-1637 (HSB) (Bankr. D. Del. Nov. 14, 1996); *In re Pic 'N Pay Stores Inc.*, No. 96-182(PJW) (Bankr. D. Del. March 29, 1996); *In re Weiner Stores, Inc.*, No. 95-410 (PJW) (Bankr. D. Del. June 20, 1995 and Oct. 31, 1995).

26. Accordingly, the Trustee respectfully requests that the Court authorize the Trustee and Agent to conduct the GOB Sales and related transactions without the necessity of, and the delay associated with, obtaining various state and local licenses, observing state and local waiting periods or time limits, or satisfying any additional requirements with respect to advertising, transferring of merchandise, and the like.

27. The Trustee submits that his request is narrowly tailored to facilitate the successful consummation of the GOB Sales and is not intend to avoid compliance with applicable, enforceable, state and local health and safety laws.

A. **Provisions Of The Debtor's Leases That
Restrict the GOB Sales, As Proposed, Are Not Enforceable**

28. Certain of the leases for the Debtor's stores might contain provisions purporting to restrict or prohibit the Trustee from conducting the GOB Sales. Such provisions impose an impermissible restraint on the Trustee's ability to maximize the value of its assets under section 363 of the Bankruptcy Code and are therefore unenforceable. *See, e.g., In re R.H. Macy & Co., Inc.*, 170 B.R. 69, 77 (Bankr. S.D.N.Y. 1994) (holding restrictive lease provisions unenforceable when debtor sought to conduct going-out-of-business sale); *In re Ames Dept. Stores, Inc.*, 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) ("[T]o enforce the anti-GOB sale clause of the Lease would contravene overriding federal policy requiring Debtor to maximize estate assets by imposing additional constraints never envisioned by Congress"); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467 (Bankr. N.D. Ga. 1990) (finding that Debtors' efforts to reorganize would be significantly impaired to detriment of creditors if lease provisions prohibiting debtor from liquidating its inventory were enforced); *In re Libson Shops, Inc.*, 24 B.R. 695, 693 (Bankr. E.D. Mo. 1982) (holding restrictive lease provisions unenforceable when debtor sought to conduct going-out-of-business sale).

29. Bankruptcy Courts have granted authority to avoid restrictive lease provisions in numerous similar cases. *See In re The ½ Off Card Shops, Inc.*, (Bankr. E.D. Michigan, Southern Division, Aug., 1999)); *In re Ames Department Stores, Inc*, No. 01-42217 (Bankr. S.D.N.Y., Aug., 2001); *In re Bradlees Stores, Inc.*, No. 00-16033; *In re: Waccamaw's Homeplace*, No. 01-181 (Bankr. D. Del. Jan., 2001 and May, 2001); *In re Drug Emporium, Inc.*, No. 01-4066 (Bankr. N.D. Ohio, E. Div., March, 2001); *In re: Phar-Mor, Inc.*, No. 01-44007 (N.D. Ohio, E. Div., March, 2001); *WSR Corporation, et al.*, 98-1241(MFW) (Bankr. D. Del. Oct. 28, 1998); *In re Montgomery Ward Holding Corp.*, No. 97-1409(PJW) (Bankr. D. Del. Nov. 7, 1997); *In re Edison Brothers*

*Stores, Inc.*, No. 95-1354 (PJW) (Bankr. D. Del. June 25, 1997); *In re County Seat Inc.*, No. 96-1637 (HSB) (Bankr. D. Del. Nov. 14, 1996); *In re Pic 'N Pay Stores Inc.*, No. 96-182(PJW) (Bankr. D. Del. March 29, 1996); *In re Weiner Stores, Inc.*, No. 95-410 (PJW) (Bankr. D. Del. June 20, 1995 and Oct. 31, 1995).

30. The Trustee therefore requests that the Court authorize the Trustee to conduct the GOB Sales without complying with such restrictive lease provisions.

B. **Lease Assignment Procedures**

31. Since the estate will continue to incur the costs associated with occupying some or all of the Debtor's retail locations through the term of the GOB Sales, the Trustee has agreed to allow GA Keen to attempt to market and sell the Leases during that term.

32. GA Keen will attempt to solicit offers from potential assignees of the Leases. In the event that any favorable offers are received, the Trustee will file pleadings seeking entry of an order authorizing the assumption and assignment of such Leases on shortened notice to the Landlord and all other parties in interest in order to minimize any ongoing administrative expenses. To the extent that no offers are received, the Leases will be rejected consistent with the procedures set forth below.

33. Given the transactional nature of GA Keen's engagement, GA Keen will not be billing the Trustee by the hour and will not be keeping records of time spent for professional services rendered in this Chapter 7 Case. GA Keen will, however, be keeping reasonably detailed descriptions of the services that were rendered pursuant to its engagement.

34. Given the transactional nature of GA Keen's services and fee structure, GA Keen has advised the Trustee that it seeks relief from complying with fee application requirements and

shall be compensated in accordance with the procedures set forth in the Application and Agreement and such procedures as may be fixed by order of this Court.

C. **Lease Rejection Procedures**

35. Since the Trustee anticipates closing the Debtor's stores during and at the conclusion of the GOB sales in the event that the Leases are not otherwise assumed and assigned, the Trustee seeks approval of an orderly process for the rejection of the Leases.

36. In order to avoid unnecessary administrative costs to the estate, the Trustee requests that the Court approve the following rejection procedure:

    A. Agent will serve the Trustee with written notice five (5) days prior to the termination of a store location (the "Five Day Notice Period") of its intent to no longer occupy and/or use the same.

    B. On or before two (2) days prior to the expiration of the Five Day Notice Period, the Trustee shall serve the Landlord with a notice of rejection (the "Rejection Notice") of the Lease(s).

    C. The affected Lease(s) shall be deemed rejected upon the expiration of the Five Day Notice Period.

    D. All assets situated at such premises on the expiration of the Five Day Notice Period shall be deemed abandoned.

37. The above rejection procedures will minimize administrative costs to the estate in paying rent and lease payments for the stores that are no longer required for the GOB Sales.

38. The Trustee also submits that the proposed rejection procedures will afford the Landlords with a greater opportunity to mitigate their damages.

D. **Abandonment Of Certain Property In Connection With The GOB Sales**

39. In addition to the abandonment rights discussed above, during the course of the GOB Sales, the Trustee may determine that the costs associated with holding or selling certain property exceed the likely proceeds that might be realized upon sale. As such, the property is of

12

inconsequential value and benefit to the Debtor's estate and may, in certain cases, be burdensome to the Debtor's estate.

40. To maximize the value of the Debtor's estate to be realized in connection with the GOB Sales, the Trustee requests authority under section 554(a) of the Bankruptcy Code to abandon property that the Trustee determines to be burdensome, or of inconsequential value and benefit, to the Debtor's estate.

**E.    The Trustee Requests Authorization To Pay
       The Operating Costs Set forth on the Budget**

41. Pursuant to section 721 of the Bankruptcy Code, the Court may authorize the Trustee "to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate."

42. In connection with the GOB Sales, the Trustee will incur certain post-petition expenses, including occupancy costs for the Debtor's stores, insurance, security and other costs identified in the Budget.

**F.    Authorization For Continued Use Of
       Credit Card And Related Facilities**

43. Many customers purchase merchandise and services from the Debtor using major credit cards or related services.

44. In connection with such facilities, the Debtor maintained agreements with such entities and processors by which the Debtor paid certain fees in exchange for the Debtor's ability to accept credit cards or related services in its stores, subject to certain adjustments, returns, and refunds.

45. The Trustee's ability to honor and process credit card and related transactions is essential to the success of the proposed GOB Sales since such sales card purchases account for a

significant portion of the sales at any given retail location. Without the ability to process these transactions, the Trustee would lose a significant avenue for transacting sales.

46. Accordingly, this Court should authorize the Trustee to continue the Debtor's pre-petition credit card and related facilities for use in connection with the GOB Sales. To the extent that any fees are owed in connection with the use of such facilities, the Trustee respectfully requests that the Court authorize him to pay same as a cost related to the operation of the GOB Sales.

47. Alternatively, the Trustee is seeking authorization to utilize one or more credit card facilities maintained or established by Agent to process credit card transactions and to reimburse Agent for all costs and other expenses directly related to such use.

### G. Authorization For Trustee's Post-Petition Use of Debtor's Accounts

48. Prior to the Filing Date, the Debtor maintained various bank accounts that it used in the ordinary course of its business.

49. In order to facilitate the swift flow of funds to the Trustee from Agent, from the credit card vendors, and from the Debtor's stores, the Trustee might have to continue to utilize one or more of these accounts.

50. The Trustee proposes to rename the accounts as Steven P. Kartzman, Chapter 7 Trustee for Arts des Provinces de France, Inc. and to direct the banks not to accept instruction from any person other than him, and not to pay any amounts on account of pre-petition obligations other than as discussed or requested herein.

51. Thus, the Trustee requests ratification and authorization to maintain these bank accounts.

**H.    Waiver Of Ten-Day Stay Period**

52.    In light of the exigencies of this case and the need to initiate the GOB Sales as expeditiously as possible, the Trustee requests that the Court waive the ten-day stay periods under Bankruptcy Rule 6004(h) and, to the extent applicable, under 6006(g).

**I.    No Prior Request**

53.    No prior request for the relief sought in this Motion has been made to this or any other Court.

**J.    Notice**

54.    The Application and proposed form of order have been served on: (a) the Attorneys' General in the jurisdictions, together with, the municipalities in which the Debtor's stores are situated; (b) the Debtor's landlords; (c) the Debtor's 20 largest creditors; (d) all vendors that have submitted written reclamation demands; (e) all parties that filed a notice of appearance in this case.

**K.    Conclusion**

WHEREFORE, the Trustee requests entry of the proposed Order(s) submitted: (a) to enter into an agency agreement with the Agent to conduct going out of business sales; (b) to sell the Debtor's assets pursuant to 11 U.S.C. §§363 and 105; (c) to maintain certain of the debtor's pre-petition bank accounts; (d) to pay all costs associated with the sales; and (e) granting related relief.

FORMAN HOLT ELIADES & RAVIN LLC
Special Counsel for Steven P. Kartzman,
Chapter 7 Trustee

By:*/s/ Michael E. Holt*
    Michael E. Holt

Dated:  August 4, 2011

M:\TTE\SK\Arts de Provinces\PLEADINGS\SALE\Global Retention and Sale Application.doc